**In re William H. McLEMORE, Jr., Debtor.**

**No. 07–33720.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

March 30, 2010.

John N. Zomoida, Jr., Youngstown, OH, for American Tax Funding LLC.

Harold Jarnicki, Lebanon, OH, for Debtor.

*Amended*

**Decision Granting Debtor's Objection to Allowance of Claim Nos. 1, 2, 3 and Denying Debtor's Objection to Allowance of Claim No. 4 of American Tax Funding**

GUY R. HUMPHREY, Bankruptcy Judge.

## I. Introduction

This contested matter presents two issues for determination by the court:

1. Should the interest rate paid on a secured claim be that set forth in a creditor's proof of claim filed preconfirmation when that rate is consistent with 11 U.S.C. § 511 as interpreted by this court, but in conflict with the rate provided by the

debtor's confirmed Chapter 13 plan when no objection to confirmation of the plan was filed? This first issue highlights the tension between the plan confirmation process and the claim allowance process.

2. Should the attorney fees and costs incurred by a nongovernmental entity in a prepetition foreclosure action to collect amounts owed on tax certificates purchased by the creditor under Ohio's delinquent real estate tax sales process for taxes owed on the debtor's residence be recoverable as part of the creditor's allowed secured claim?

As explained below, the court is granting the debtor's objection to the creditor's claims to the extent that the creditor is seeking to be paid interest at a rate in excess of the rate provided by the debtor's Chapter 13 plan because pursuant to § 1327(a) the debtor's confirmed plan is binding upon the creditor. However, the court is denying the debtor's objection to the creditor's claim as to the attorney fees and costs incurred relating to the prepetition foreclosure action based upon 11 U.S.C. § 502.

**II. Facts and Procedural Background**

On November 21, 2005 and October 26, 2006 American Tax Funding ("ATF") purchased at public auctions, pursuant to the provisions of Ohio Revised Code ("ORC") § 5721.32, two tax certificates for real estate taxes owed on William H. McLemore, Jr.'s (the "Debtor") principal residence at 21 Gramont Avenue, Dayton, Ohio (the "Property") in the amounts of $5,942.16 and $1,154.68 with interest payable at the

rate of 18% per annum. *See* Claims Nos. 1 & 2.[1]

On June 19, 2007 ATF, pursuant to ORC § 5721.37, filed a notice of intent to foreclose with the Montgomery County, Ohio Treasurer (the "Treasurer") on the tax certificates and paid the Treasurer the sum of $526.86 for delinquent taxes and other amounts that were charged against the Property but not covered by the tax certificates. *See* Claim No. 3. On July 6, 2007 ATF commenced a foreclosure action against the Property in the Montgomery County Court of Common Pleas and incurred fees and costs in the amount of $1,800. *See* Claim No. 4.

On August 27, 2007 the Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code[2] (Doc. 1). On Schedule D (Creditors Holding Secured Claims), the Debtor listed the Treasurer as holding a claim for real estate taxes secured by a lien on the Debtor's principal residence at 21 Gramont Avenue, Dayton, Ohio 45417 in the amount of $11,767. In addition to listing the Treasurer at a Dayton, Ohio address, the service list attached to the Debtor's petition includes the "Montgomery County Treasurer, c/o Anthony & Zomoida LLC, 55 Public Square, Suite 1800, Cleveland, Ohio 4411" and the "Montgomery County Treasurer, c/o American Tax Funding LLC, 345 Jupiter Lake Blvd., Suite 300, Jupiter, Fl. 33458."

Also on August 27, 2007 the Debtor filed his initial Chapter 13 plan (Doc. 6). The plan is based upon the Dayton Chapter 13 Trustee's model Chapter 13 plan. Section 8 of the Dayton Chapter 13 Trustee's model Chapter 13 plan and the Debtor's plan

---

1. *See In re Cortner,* 400 B.R. 608, 612–13 (Bankr.S.D.Ohio 2009) (describing the tax certificate auction process under Ohio law).

2. Unless otherwise noted, all statutory references are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. §§ 101–1532 (the "Code"), cited hereinafter in this decision as "§ ——".

provide for the payment of allowed Class 2 secured claims at the *Till* interest rate (prime rate of interest plus 1.5%) (*see Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004)).[3] *See* Doc. 6, p. 6. The Debtor's three subsequent plan amendments provide for an increase in monthly payments and the surrender of several of the Debtor's non-residential properties but do not alter the treatment of Class 2 secured claims or fees and costs associated with ATF's foreclosure action (Docs. 15, 19 & 25). The Debtor's plan and the amendments will be collectively referred to as "the Plan."

On September 1, 2007 the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines (Form B9I) was mailed to the Treasurer at its Dayton address, to the Treasurer at ATF's Florida address, and to the Treasurer at the offices of Anthony & Zomoida, LLC in Cleveland, both referenced above. This notice, among other things, sets November 13, 2007 as the initial date for the hearing on confirmation of the Plan and contains a statement that "[a] plan is not effective unless confirmed by the bankruptcy court" and that "[y]ou may object to confirmation of the plan and appear at the confirmation hearing."

On September 6, 2007 Anthony & Zomoida, LLC filed a notice of appearance (Doc. 14) and four proofs of claim (Claim Nos. 1, 2, 3, and 4) on behalf of ATF. The first two proofs of claim were for the delinquent real estate taxes secured by a lien on the Property and sought payment of those delinquent taxes at the 18% interest rate established by the tax certificates.

The third one was for the $526.86 in real estate taxes that ATF paid the Treasurer when it filed the notice to foreclose on the Property and also sought payment of those taxes at the 18% interest rate. The fourth proof of claim related to the $1,800 in attorney fees and costs associated with ATF's prepetition prosecution of the foreclosure action against the Property. The total amount of the four proofs of claim is $11,488.43.

Pursuant to Local Bankruptcy Rule ("LBR") 3015–3, the last date to file objections to confirmation of the initial plan was October 19, 2007.[4] On December 28, 2007 the court sent notice of the scheduled confirmation hearing for the Plan to all parties in interest, including to ATF at the addresses previously described. The Plan was confirmed on February 11, 2008 without objection from any creditor (Doc. 26).

On February 14, 2008 the Chapter 13 Trustee filed notices to allow ATF's secured claims in connection with each of ATF's proofs of claim, advising ATF that the interest to be paid by the Trustee on its claims would be 7.5% (Docs. 28, 29, 30 & 31). On March 11, 2008 ATF filed a response to the Chapter 13 Trustee's notices objecting to the 7.5% interest rate and arguing that as a purchaser of tax certificates and pursuant to ORC §§ 5721.32 et seq., it is entitled to the 18% statutory interest rate (Doc. 35). On March 15, 2008 the Debtor filed objections to ATF's four proofs of claim (Docs. 36–39). In addition, ATF and the Debtor have filed briefs in support of their respective positions (Docs. 79, 80 & 81). Collectively, these matters (Docs. 28–39 and 79–

---

**3.** The term *"Till* interest rate" refers to the "prime-plus" rate of interest determined to be appropriate in cramdown cases under § 1325(a)(5)(B) in *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

**4.** At the time, LBR 3015–3(a)(1) provided for objections to confirmation to be served not later than ten (10) days after the § 341 creditors meeting was concluded. Effective December 1, 2009, that ten day period was changed to fourteen (14) days.

81) are referred to in this decision as the "contested matter."

The Debtor asserts that the claims should be disallowed to the extent that they request an 18% interest rate rather than the *Till* interest rate provided by the Plan. The Debtor argues that confirmation of the Plan operates as res judicata and, therefore, the interest rate provided by the Plan is binding on ATF. The Debtor contends that the fourth claim for the $1,800 in foreclosure attorney fees and costs should be disallowed because those fees and costs are not recoverable under § 1322(e) since the Debtor does not have a contractual relationship with ATF defining the parties' obligations.

ATF, on the other hand, essentially argues that pursuant to § 511, as a purchaser of tax certificates from the Treasurer, it is entitled to receive the interest rate provided in the tax certificates and that it may recover the attorney fees and costs associated with its foreclosure action. ATF also contends that because the Plan was ambiguous as to the treatment of its claims, it was not provided adequate notice of the interest rate provided by the Plan and its silence cannot be construed as acceptance of the Plan.

## III. Legal Analysis

### A. Jurisdiction

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334 and the general Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### B. The Plan Controls the Interest Rate for ATF's Claims

■ ATF received proper notice of the Plan and the treatment of its claims under the Plan and did not object to that treatment. Therefore, it is bound by the terms of the Plan confirmed by the court, including the interest rate provided by the Plan for allowed secured claims. Accordingly, the Debtor's objection to claim numbers 1, 2, and 3 is granted.

### 1. *The Plan Terms Relating to Secured Claims*

Analyzing the terms of the Plan is critical to the determination of this contested matter. This is because the Debtor claims that the terms of the Plan are binding on ATF pursuant to § 1327(a) and preclusion principles, while ATF claims that it did not receive adequate notice of the terms of the Plan as sought to be enforced by the Debtor.

The first full paragraph on the first page of the Plan is significant because, in conspicuous print, it warns recipients of the Plan that the Plan may affect any claim which they hold. It states:

**You should read this Plan carefully. Confirmation of this Plan by the Bankruptcy Court may modify your rights by providing for payment of less than the full amount of your claim, by setting the value of the collateral securing your claim, by providing for a treatment of your claim contrary to your current status, and/or by setting the interest rate on your claim. The Court may confirm this case if no objection to confirmation is filed within ten (10) days after the § 341 Meeting of Creditors is concluded (L.B.R.3015(a)).**

Plan, p. 1 (bold in the original).

There are several sections of the Plan which affect secured claims. First, secured claims are classified as "Class 2" claims and are described on page 5 of the Plan as follows:

*Class 2:* Secured claims listed on Schedule D for which the plan does not provide specific monthly payments; and any scheduled claim designated for inclusion in this class. This class will include mortgage arrearages, additional post-petition attorney fees, Certificates of Judgment and *secured real estate taxes* ...

Plan p. 5 (italics added). Section 6 of the Plan provides additional details as to the treatment of secured claims. In part, it states:

**6. Secured Claims (Valuation of Collateral, Interest Rates, Lien Retention and Release, and Surrender of Property)—**

(A) With respect to each allowed secured claim, unless the holder of the claim has accepted a different treatment of the claim, or the Debtor proposes to surrender the property securing the claim to such holder, **the holder of each allowed secured claim shall retain the lien securing such claim until the secured and unsecured claim is paid,** and shall be paid an amount that is not less than the allowed amount of such claim, *plus interest at the rate hereinafter set forth on the unpaid balance of the allowed secured claim.*

\* \* \*

Plan, p. 6, § 6 (italics added, bold and underlining in the original). Finally, section 8 of the Plan sets forth the interest rate to be paid on Class 2 claims. In relevant part, it states:

**8. Interest—**

(A) The interest rate to be paid on allowed Class 2 secured claims, including prepetition real estate mortgage arrearages, shall be based on the national prime rate plus the appropriate risk factor of 1.5% from the date nearest to the approximate date of confirmation of the plan. The rate will be determined by the *Wall Street Journal* for Money Rates. The actual amount of interest paid will be calculated by the Trustee in the Trustee's reasonable and customary administration procedures.

(B) Except as otherwise provided by subparagraph (D), interest shall not commence on any claim until the later of the allowance of the claim or the effective date of the plan.

\* \* \*

Plan, p. 6 § 8.

### 2. *§ 1327(a) and the Binding Effect of a Confirmed Plan*

Section 1327 of the Code sets forth the effects of a confirmed plan. In particular, § 1327(a) states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). This section has been widely interpreted as barring the relitigation of any issue which was or could have been decided at the time the plan was confirmed. *In re Welsh,* 1998 WL 773999, at \*2 (6th Cir. Oct.11, 1998) (table decision). Underlying this principle is the need for finality that parties have after confirmation of a plan so that they may rely upon the terms of the plan and confirmation order "without concern that actions which they may thereafter take could be upset because of a later change or revocation of that order." 8 Collier on Bankruptcy, 1327.02 (16th ed.2009). This policy is so strong that a "creditor may not ignore the confirmation process.... A creditor who disregards a procedurally proper and plain notice that its interests are in jeopardy does so at its own risk." *Factors Funding Co. v. Fili,*

257 B.R. 370, 374 (1st Cir.2001). Exceptions to the res judicata effect of a confirmed Chapter 13 plan exist "where fraud is involved . . . where there is a lack of due process caused by failure to provide notice of the proposed plan to creditors, where the plan is ambiguous, or where the plan contains a term that raises an unexpected problem at some time in the future." *Case v. Wells Fargo Bank, NA,* 394 B.R. 469, 476 (Bankr.E.D.Wis.2008) (internal citations omitted).

 As noted, the need for finality does not trump a creditor's due process rights and before a plan can become binding, creditors and parties in interest must receive notice and be given an opportunity to object to confirmation of a debtor's plan. *In re Harris,* 293 B.R. 438, 441 (Bankr. N.D.Ohio 2003). That notice must be reasonably calculated under all circumstances to apprise the creditor that its rights may be altered. *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "Due process is the linchpin to determining the rights of secured creditors in chapter 13, and if a creditor receives clear notice, but chooses to ignore the bankruptcy proceedings, it does so at its peril." *In re Shook,* 278 B.R. 815, 825 (9th Cir. BAP 2002) citing *Lawrence Tractor v. Gregory (In re Gregory ),* 705 F.2d 1118, 1122–23 (9th Cir.1983). Therefore, absent a timely objection and appeal, a confirmation order is res judicata and not subject to a collateral attack by a creditor who has received adequate notice of a plan. Ford *Motor Credit Co. v. Parmenter (In re Parmenter ),* 527 F.3d 606, 609 (6th Cir.2008).

ATF received notice of the Debtor's case and of the Plan. ATF does not argue that the notice was "quantitatively defective." *In re Hudson,* 260 B.R. 421, 440 (Bankr.

W.D.Mich.2001) (describing a quantitatively sufficient notice as one which complies with Federal Rules of Bankruptcy Procedure 2002(b) and 3015(d)).[5] The Bankruptcy Noticing Center mailed the notice of the case and of the Plan on September 1, 2007 (Docs. 12 & 13). The notice of the case indicates that the confirmation hearing was set for November 13, 2007. The certificate of service for the notice of the case and the Plan show that ATF received these notices at its corporate address in Florida and at the address of its counsel in Cleveland. Further evidencing ATF's receipt of these notices, ATF filed a notice of appearance and proofs of claim on September 6, 2007. In addition, the three amendments to the Debtor's plan were served on ATF electronically through its counsel and the Chapter 13 Trustee's objections to these amendments (Docs. 16 & 21), a notice of rescheduled hearing (Doc. 20), and an agreed order sustaining the Chapter 13 Trustee's objections and providing that the Debtor shall file an amended plan by December 25, 2007 (Doc. 23) were served on ATF's counsel in Cleveland, and the docket shows that notice of the confirmation hearing set for February 2, 2008 was electronically mailed to ATF's counsel at two different email addresses on December 28, 2007. The order confirming the Plan was also served on ATF's counsel (Doc. 26). Thus, the record undisputedly establishes that ATF received notice of the case and the Plan well within the time to object to the Plan, and participated in the case during that time period by filing its notice of appearance and proofs of claims.

However, ATF argues that the notice of the Plan was "qualitatively defective." *See* Doc. 81, pp. 3–4. and *Hudson,* 260 B.R. at 440 (a qualitatively sufficient notice is one

**5.** Unless otherwise noted, all references to rules of court shall be to the Federal Rules of

Bankruptcy Procedure ("BR") or the Federal Rules of Civil Procedure ("FRCP").

that contains all the material substantive and procedural information necessary to apprise a creditor of the debtor's proposed treatment of the creditor's claim). In particular, ATF contends that the Plan "did not state with sufficient particularity how ATF's claims would be treated" (Doc. 81, p. 4) and as a result, ATF was uncertain as to whether its claims were treated as secured claims. ATF explains that the Plan provides that "Class 2 Claims are '[s]ecured claims listed on Schedule D ...'" and that despite having filed a foreclosure action prior to the Debtor's bankruptcy filing, the Debtor failed to list ATF on Schedule D. *Id.*

There are two problems with ATF's due process argument. First, the court finds that the Plan is not ambiguous as to the treatment of ATF's claims. The Plan designates the secured claims as "Class 2." It describes that class as including "claims listed on Schedule D for which the plan does not provide specific monthly payments; and any scheduled claim designated for inclusion in this class," along with mortgage arrearages, certificates of judgment, and secured real estate taxes. Plan, p. 5. In this case, the Debtor scheduled real estate taxes for 2005–2007 in the amount of $11,767 as being owed to the Treasurer (Doc. 1, Schedule D (Secured Claims)). However, on the creditor list for service purposes, the Debtor listed the Treasurer at the Treasurer's office address, "451 W. Third Street, Dayton, OH 45422–1475" and also as "Montgomery County Treasurer, c/o Anthony & Zomoida LLC, 55 Public Square, Suite 1800, Cleveland, OH 44113" and "Montgomery County Treasurer, c/o American Tax Funding, 345 Jupiter Lake Blvd., Suite 300, Jupiter, FL 33458" (Doc. 1). Thus, the Plan contains a classification for secured creditors and from the Plan and the schedules there can be no doubt that ATF was a secured creditor and was being treated under the Plan

as an allowed secured creditor. In fact, there has been no dispute that ATF is an allowed secured creditor.

Further, the Plan describes with particularity the treatment of secured claims: "[w]ith respect to each allowed secured claim, ... the holder of each allowed secured claim ... shall be paid an amount that is not less than the allowed amount of such claim, *plus interest at the rate hereinafter set forth on the unpaid balance of the allowed secured claim.*" Plan, Section 6 (emphasis added). Section 8, also clearly and unambiguously, provides that the interest rate on "allowed Class 2 secured claims ... shall be based on the national prime rate plus the appropriate risk factor of **1.5%** .... The rate will be determined as shown in the *Wall Street Journal* for Money Rates." Plan, p. 6 (emphasis in original). Finally, as noted previously, the first full paragraph on the first page of the Plan written in bold warns creditors that confirmation of the plan may "**modify your rights ... by setting the interest rate on your claim**" and in the absence of timely filed objection, the court may confirm the plan. Plan, pg. 1 (emphasis added).

■■ "The practicalities and peculiarities of the case" may also be taken into account when determining whether notice is adequate. *Hudson,* 260 B.R. at 442 (quoting *Mullane,* 339 U.S. at 314–15, 70 S.Ct. 652). In particular, it may be appropriate to consider a "creditor's sophistication, the amount of their involvement in the bankruptcy proceeding, as well as that creditor's reliance on the claims allowance procedures as demonstrated by a proof of claim filed before plan confirmation." *Id.* at 443, 70 S.Ct. 652, *citing In re Basham,* 167 B.R. 903, 908 (Bankr.W.D.Mo.1994). In this case, ATF, as a purchaser of tax claims, indisputably stands as a sophisti-

cated creditor, who is well-versed in bankruptcy matters generally, and Chapter 13 matters in particular. Therefore, the court is unconvinced that ATF could have been confused about the Debtor's proposed treatment of its claims.

 If, upon receipt and review of the Debtor's Plan, ATF determined that the Plan's treatment of its claims was ambiguous, it should have filed a timely objection to the Plan. *See United Student Aid Funds, Inc. v. Espinosa,* —— U.S. ——, 130 S.Ct. 1367, 1380, 176 L.Ed.2d 158 (2010) ("Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief.") "Forcing parties to raise concerns about the meaning of Chapter 13 filings at the original confirmation proceedings does not impose an unreasonable burden on bankruptcy participants. Quite the contrary—it is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable, vague, or ambiguous." *In re Harvey,* 213 F.3d 318, 322 (7th Cir.2000); *In re Averhart,* 372 B.R. 441, 445–46 (Bankr.E.D. Wi.2007) (Secured creditor held to be bound through § 1327(a) to interest rate provided by a chapter 13 plan); and 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 233.1, at 233–74 to 233–76 (3d ed.2007). *See also In re Friedman's, Inc.,* 356 B.R. 766, 773 (Bankr.S.D.Ga.2006), citing *Harvey* and applying the same rule in enforcing a Chapter 11 plan under § 1141(a).

 Accordingly, the Plan classifies secured claims and unambiguously provides the treatment of secured claims, including the interest rate for secured claims-"national prime rate plus the appropriate risk factor of 1.5%." Short of expressly naming ATF as a Class 2 allowed secured creditor in the Plan, the court cannot envision how the Debtor could have more clearly described the treatment of ATF under his Plan. However, a debtor need not expressly describe or name a creditor in his Chapter 13 plan. *See* 11 U.S.C. § 1322. Finally, even if the Plan was ambiguous as to the treatment of ATF's claims, ATF was under an obligation to object to confirmation of the Plan prior to confirmation of the Plan to enable the court to address the issue in conjunction with confirmation of the Plan. Accordingly, the court finds that ATF received sufficient notice of the Plan so as to be bound by its terms.

### 3. *Confirmation of the Plan Did Not Offend § 1325(3)*

ATF also argues that the Plan is not binding on it because its terms as applied to ATF violate § 1325(a)(5) and a plan cannot be confirmed in violation of § 1325(a), citing *Shaw v. Aurgroup Financial Credit Union,* 552 F.3d 447 (6th Cir. 2009).

 ATF's argument that the Plan violates § 1325(a)(5) and *Shaw* is erroneous for two reasons. First, the Debtor complied with § 1325(a)(5) by "permitting the creditor to both retain the lien securing the claim" with deferred cash payments in an amount not less than the allowed amount of the claim as of the effective date of the Plan and interest at an appropriate rate. Second, as *Shaw* recognizes, § 1325(a) does not provide a creditor with an excuse to not timely object to confirmation of a plan if the creditor believes that a provision of the Code, including § 1325(a), is violated or to appeal the confirmation order if its objection is not granted. *Shaw,* 552 F.3d at 457.

Section 1325(a)(5) provides a disjunctive three part test for determining whether a Chapter 13 plan can be confirmed as to a secured claim. *AmeriCredit Financial Services, Inc. v. Long (In re Long )*, 519 F.3d 288, 291–92 (6th Cir.2008).[6] ATF only focuses on the first disjunctive element—whether it "accepted" the Plan. It argues that it did not "accept" the Plan and, therefore, the Plan could not have been or should not have been confirmed. However, the Debtor met the second element of § 1325(a)(5), which provides that the court may confirm the plan as relates to a secured claim if:

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328 [11 USCS § 1328]; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan;

As previously set forth, § 6 of the Plan, p. 6 (emphasis in original), provides with respect to secured claims that:

... unless the holder of the claim has accepted a different treatment of the claim, or the Debtor proposes to surrender the property securing the claim to such holder, *the holder of each allowed secured claim shall retain the lien securing such claim until the secured and unsecured claim is paid,* and shall be paid an amount that is not less than the allowed amount of such claim, plus interest at the rate hereinafter set forth on the unpaid balance of the allowed secured claim.

This Plan provision complies with § 1325(a)(5)(B). Although ATF is not receiving the interest rate it seeks, the Plan did not violate § 1325(a)(5). That provision only requires that interest be paid at an appropriate "prime-plus" rate. *See Till,* 541 U.S. at 478–79, 124 S.Ct. 1951. Through the confirmation hearing and the lack of objection to the Plan, the court determined that the prime plus 1.5% rate provided by § 8 of the Plan satisfied this requirement.

In addition, as Shaw noted, a creditor cannot collaterally attack a confirmed plan with such an argument. The court quoted

---

**6.** In essence, § 1325(a)(5) provides that a Chapter 13 plan may be confirmed as to the treatment provided to a secured claim if the plan satisfies one of three alternatives: (1) acceptance of the plan by the holder of the secured claim; (2) retention of the lien by the secured creditor with the creditor being provided at least the value of its claim in payments made over time under the plan; or (3) surrender of the collateral to the secured creditor.

a lengthy section from *In re Jones*, 530 F.3d 1284 (10th Cir.2008) which stated:

As we have previously indicated, however, if a secured creditor fails to object to confirmation, the creditor will be bound by the confirmed plan's treatment of its secured claim under § 1325(a)(5). This is because the failure to object constitutes acceptance of the plan. And a creditor's acceptance of a Chapter 13 plan is one way to satisfy the requirements of § 1325(a)(5) with respect to that creditor's allowed secured claim.

*Id.* at 457. Thus, *Shaw* refutes ATF's very argument that it did not "accept" the Plan.

ATF's argument also fails because ATF did not challenge the treatment of its claims by timely appealing the confirmation order. A confirmation order entered by a bankruptcy court constitutes a final judgment that can be appealed. *Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir.1992); *see also Espinosa*, 130 S.Ct. at 1377–78. By failing to object to the Plan or appeal the confirmation order, the confirmed Plan became binding on ATF, the Debtor, the Chapter 13 Trustee and all parties in interest.

4. *The Treatment of a Claim, Including Issues Pertaining to the Payment of Interest, are Generally Controlled by the Plan Confirmation Process, Not by the Claims Allowance Process*

Acknowledging that "a secured creditor's silence may constitute acceptance" of a plan, ATF also argues that the filing of its proofs of claim after the filing of the Plan but prior to its confirmation put the Debtor on notice that it was objecting to the treatment of its claims and that those proofs of claim combined with ATF's failure to file a formal objection to confirmation do not imply that it accepted the Plan but instead establish that ATF was not consenting to be paid at the *Till* rate of interest. ATF's argument premised on its filing of its proofs of claim fails for the reasons previously discussed, including the fact that the Plan complied with § 1325(a)(5)(B). In addition, this argument fails because the plan confirmation process set forth in §§ 1321–1329 controls the *treatment* of claims, including whether interest is to be paid on a claim and, if so, what interest is to be paid on the claims. The claim allowance process set forth in §§ 501–506 controls whether an entity holds a claim which may be paid by the bankruptcy estate and, if so, the proper amount of any such claim and the nature of the claim, including whether it is entitled to priority or secured status.

As stated in *Hudson:*

More contemplative battles over the extent of the binding effect of confirmation under § 1327(a) have been fought when the provisions of a confirmed plan collide with the claims allowance process. Problems arise because the Bankruptcy Code describes two parallel processes that inevitably interact and overlap at confirmation in a Chapter 13 case.

*Hudson*, 260 B.R. at 429 (citing 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 6.10 at 6–15 (2d ed.1994)). Judge Lundin aptly summarizes the conflict that arises, clouding the seemingly clear language of § 1327(a), when the plan confirmation process collides with the claim allowance process. This clash occurs as a result of the timing of plan confirmation and claim allowance—plans are often confirmed before the deadline for filing proofs of claims is reached. That is the case in this district. Before reviewing how courts have addressed this conflict, the court will briefly describe the two distinct tracks that constitute the plan confirmation process and the claim allowance process.

*The Confirmation Process.* A Chapter 13 debtor must file a plan and must in-

clude the plan or a summary of the plan with each notice of the hearing on confirmation. 11 U.S.C. § 1321, BR 2002, and LBR 3015(d). Section 1322 sets forth certain mandatory and permissive payment provisions that a plan must or may include. In particular, under § 1322(a), a plan must provide for the full payment of all priority claims and if the plan classifies claims, provide the same treatment for each claim within a particular class. 11 U.S.C. § 1322(a)(2) & (3). Section 1322(b) states several additional parameters that a plan may meet if applicable. Specifically, a plan may (i) designate a class or classes of unsecured claims; (ii) modify the rights of secured creditors other than a claim secured only by security interest in real property that is the debtor's principal residence; (iii) provide for the curing or waiving of any default; and (iv) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim. 11 U.S.C. § 1322(b)(1), (2), (3) & (4). In sum, § 1322 sets forth mandatory and permissive treatment for claims against a debtor under a plan. Pursuant to § 1324(a), the court shall hold a confirmation hearing and a party in interest may object to the confirmation of the plan. BR 3015(f) requires that objections to confirmation of a Chapter 13 plan be filed and served prior to confirmation of a plan and LBR 3015-3, as in effect at the time of the filing of this case, required that objections be in writing and filed and served no later than ten days after the conclusion of the meeting of creditors. LBR 3015-3(a)(1). LBR 3015-3(a)(2) requires that the objecting party file a memorandum in support of the objection which refers to the specific Code section and the specific facts on which the objection is based. LBR 3015-3(a)(2). In sum, a plan classifies claims, establishes how different types of claims

are to be paid or treated, and once confirmed, binds all parties in interest. 11 U.S.C. §§ 1325(a) & 1327(a).

*The Claim Allowance Process.* Pursuant to § 501(a), a creditor may file a proof of claim. 11 U.S.C. § 501(a). A claim properly filed in accordance with § 501 is deemed allowed unless a party in interest objects to it. 11 U.S.C. § 502(a). Under BR 3001(f), a proof of claim properly executed and filed is prima facie evidence of the validity and amount of a creditor's claim. To challenge the amount or validity of a claim properly filed under § 501(a), an objection is required. Claim objections also are commonly filed to contest the classification of a claim as secured rather than unsecured or the priority status asserted by a claimant. These types of claim objections are designed to resolve the class or treatment to which a particular claim is entitled under a plan. It remains however that the treatment of a claim is provided by the plan, not by the proof of claim. BR 3007 does not does not provide any deadline for objecting to claims. *See In re Windom,* 284 B.R. 644, 647 (Bankr. E.D.Tenn.2002) (internal citations omitted).

Tension between the plan confirmation process and the claim allowance process is heightened when a creditor files a proof of claim prior to the plan confirmation hearing, does not object to the treatment of its claim provided by the debtor's plan, and after the plan is confirmed the debtor objects to the creditor's proof of claim. Such is the case in this contested matter. However, as a general rule, only when the treatment provided in the plan directly contravenes a provision of the Bankruptcy Code or of the Federal Rules of Bankruptcy Procedure have some courts determined that the treatment provided by the plan

does not prevail.[7]

The filing of a proof of claim which sets forth an interest rate that is different than that provided by the plan does not trump the rate set forth in the plan absent a timely-filed objection to the plan. As explained in *Hudson:*

> A proof of claim properly executed and filed is prima facie evidence of the validity and amount of the creditor's claim ... A secured creditor who files a claim has a correct and lawful expectation that the validity and the amount of its nonbifurcated claim, absent objection, is proven and binding upon the debtor, the trustee, and other creditors. However, it is a misconception for such a creditor to expect that filing a claim establishes [ ... ] the appropriate present value interest rate. To determine an "allowed secured claim" under § 506(a), something more is required other than the mere filing of a claim.

*Hudson,* 260 B.R. at 430–31. Judge Gregg further noted in *Hudson* that "[i]f the secured creditor believes its plan treatment regarding the secured claim is erroneous, it must object to confirmation. If no objection is filed, the creditor is bound by the plan treatment of its secured claim." *Id.* at 437. Thus, a filed proof of claim cannot serve as a substitute for a plan objection and creditors cannot circumvent their obligation to object to a plan by relying on a timely-filed proof of claim. *In re Stansbury,* 403 B.R. 741, 749 (Bankr. M.D.Fla.2009) (internal citations omitted).[8]

7. For example, in the following cases the courts determined that the plan provisions prevailed when the proofs of claim were inconsistent with the plans: *City of Flint v. Bekofske (In re McGee),* 414 B.R. 132 (E.D.Mich.2009) (the provisions of a plan classifying a claim as unsecured were binding when the creditor did not file an objection to the plan but instead filed a proof of claim prior to confirmation identifying its claim as secured); *In re Thaxton,* 335 B.R. 372 (Bankr. N.D.Ohio 2005) (secured creditor bound by the terms of a plan which modified its rights in violation of § 1322(b) when creditor failed to object to the plan but post-confirmation filed a proof of claim for a different amount than provided for in the plan); *Factors Funding Co. v. Fili (In re Fili),* 257 B.R. 370 (1st Cir. BAP 2001) (secured creditor's claim extinguished pursuant to the provisions of confirmed plan when creditor failed to object to plan confirmation and filed a proof of claim post-confirmation); *In re Sanders,* 243 B.R. 326 (Bankr.N.D.Ohio 2000) (creditor bound by the terms of a plan when creditor did not object to the plan and filed a proof of claim prior to confirmation with a notation that it rejected the plan); *In re Szostek,* 886 F.2d 1405, 1414 (3rd Cir.1989) (a creditor's failure to object constitutes acceptance and permits confirmation even if the plan does not treat an allowed secured claim in accordance with [§ 1325(a)] ); *Shaw v. Aurgroup Financial Credit Union,* 552 F.3d 447, 457 (6th Cir.

2009). However, in the following cases the courts refused to find plan provisions binding under § 1327(a) when those provisions conflicted with Code or Rule provisions that mandated a particular treatment of that type of claim: *In re Montoya,* 341 B.R. 41 (Bankr. D.Utah 2006) (lender's failure to object to proposed plan does not constitute implied acceptance such as to bind lender when plan proposed to bifurcate creditor's claim in violation of Code provisions enacted through BAPCPA); *In re Carr,* 318 B.R. 517 (Bankr. W.D.Wis.2004) (plan confirmation order was void and not entitled to res judicata effect despite a creditor's lack of objection to the plan prior to confirmation when language in confirmed plan violated anti-bifurcation provision of § 1322(b)(2)); *In re Woods,* 406 B.R. 293 (Bankr.N.D.Ohio 2009) (similar facts and conclusion with an additional finding that the creditor did not receive sufficient notice that its rights may be placed in jeopardy).

8. In addition to the binding effect of § 1327(a), another reason why proofs of claim should not prevail over conflicting plan provisions is that confirmation hearings are to take place shortly after the filing of the case and often take place before the deadline for filing proofs of claim has expired (90 days after first date set for the meeting of creditors) and before proofs of claim can be resolved through the claims allowance process.

Stated differently, a proof of claim filed by a creditor does not serve to modify or amend a plan and confirmation of the plan binds the debtor and creditor to the treatment of the claim provided by the plan pursuant to § 1327(a).

In this case, ATF had ample time to exercise its right to object to the Debtor's Plan. The Debtor filed his initial plan on August 27, 2007 and filed three subsequent amendments, which did not alter the treatment of ATF's claims. In fact, almost five months elapsed between the time ATF filed its proofs of claim and the date of the confirmation hearing. "The opportunity to object to a proposed plan is not merely an option to be exercised at the convenience of the creditors." *Thaxton,* 335 B.R. 372, 375 (Bankr.N.D.Ohio 2005) (internal citations omitted); *see also Espinosa,* 130 S.Ct. at 1380. Accordingly, regardless of the merits of ATF's argument that as a purchaser of tax certificates from the Treasurer it is entitled to receive the interest rate provided in the tax certificates, ATF's proofs of claim were not appropriate substitutes for a timely-filed objection to confirmation of the Plan.

5. *Code § 511, as Construed by this Court in Cortner, Does Not Compel the Court to Disregard the Binding Effect of § 1327(a)*

▮▮▮ ATF also argues that the court should disregard the binding effect of the

Plan and confirmation order because the interest rate provided in section 8 of the Plan conflicts with § 511 as interpreted by this court in *Cortner.*[9] ATF cites *In re Montoya,* 341 B.R. 41, 42 (Bankr.D.Utah 2006) in support of this contention. This argument also must be rejected.

*Montoya* is not apposite to this case for several reasons. First, the facts of *Montoya* are critically different from the facts of this case. In *Montoya,* the plan, which proposed to bifurcate a claim in violation of the so-called hanging paragraph found after § 1325(a)(9), was not yet confirmed. *Montoya,* 341 B.R. at 42. When a plan is not confirmed, "the doctrine of res judicata and the policy considerations supporting finality of judgments are inapplicable and unpersuasive." *Id.* at 46. In this case, the Plan has already been confirmed and, thus, the issue is not whether the Plan should be confirmed when it violates § 511 as subsequently determined by this court in *Cortner.*

Second, the court in *Montoya* determined that even though the creditor had failed to object to confirmation of the plan, its silence could not be construed as acceptance because:

The concept of implied acceptance of an otherwise compliant plan, or even voting on similar provisions in Chapter 11, however, is quite different from proposing a plan intentionally inconsistent with

---

See 11 U.S.C. § 1324(b); BR 3002(c). In addition, while a secured proof of claim need only be accompanied by documents evidencing the secured status of the claimant (LBR 3001–1(d)), an objection to a plan must include a memorandum explaining the legal and factual basis for the objection to the plan. *See* LBR 3013–3(a)(2). While ATF's proofs of claim are accompanied by an explanation of its secured status, this explanation falls short of the requirements of a memorandum supporting an objection to a plan.

9. *In re Cortner,* 400 B.R. 608 (Bankr.S.D.Ohio 2009). In *Cortner,* ATF, who, prepetition, had purchased tax certificates also from the Montgomery County Treasurer, timely objected to confirmation of a Chapter 13 plan that proposed to pay ATF's claim at the Till interest rate rather than the rate provided by the tax certificates and the applicable Ohio statutes. This court determined that ATF was the holder of a "tax claim" as contemplated by § 511 and was entitled to payment of interest at the rate provided by the tax certificates and the applicable Ohio statutes. *In re Cortner,* 400 B.R. 608 (Bankr.S.D.Ohio 2009).

the Code and then waiting for the trap to spring on a somnolent creditor. Creditors are entitled to rely on the few unambiguous provisions of the BAPCPA for their treatment. They should not be required to scour every Chapter 13 plan to ensure that provisions of the BAPCPA specifically inapplicable to them will not be inserted in a proposed plan in the debtor's hope that the improper secured creditor treatment will become *res judicata.*

*Id.* at 45. While courts, and this circuit in particular, have agreed that the interpretation of the hanging paragraph prohibits bifurcation of a secured claim on a car purchased within the 910 day period preceding the filing of bankruptcy (*See AmeriCredit Fin. Svcs., Inc. v. Long (In re Long )*, 519 F.3d 288 (6th Cir.2008)), the same cannot be said with respect to the interpretation of § 511 as it relates to purchasers of tax claims. The applicability of § 511 to persons other than taxing authorities was an unsettled legal issue at the time the Plan was filed and confirmed and remains to this date an unsettled area of law. See *In re Prevo*, 393 B.R. 464 (Bankr.S.D.Tex.2008) (concluding that Texas law does not allow for the purchase of tax claims and that a third party purchaser acquires a tax lien and not a tax claim and is not afforded the protections of § 511) and *In re Princeton Office Park, LP*, 423 B.R. 795 (Bankr.D.N.J.2010) (holding that persons other than taxing authorities are not holders of "tax claims" under § 511); *but see Kizzie–Jordan*, 2009 WL 3186727 at *4 (S.D.Tex. Sept.29, 2009);

and *In re Davis*, 352 B.R. 651 (Bankr. N.D.Tex.2006) (holding to the contrary). Although this court determined on February 4, 2009 in *Cortner* that the protections afforded by § 511 apply to a purchaser of tax claims under Ohio law, a year earlier at the time of the Plan confirmation, this court had not ruled on the issue and it was far from a settled issue of law. Therefore, any expectation that ATF alleges to have had that the Plan comport with the requirements of § 511 could not have been based on established jurisprudence but, at best, on ATF's own interpretation of the statute.

Thus, the Debtor had not "propos[ed] a plan intentionally inconsistent with the Code and then waited for the trap to spring on a somnolent creditor." *Montoya*, 341 B.R. at 45. The provisions of the Plan relating to the treatment of secured tax claims and the interest rate paid on such claims were taken directly from the Dayton model Chapter 13 plan, the interpretation of § 511 with respect to third-party purchasers of tax claims remained unsettled at the time the Plan was confirmed, and ATF, a sophisticated creditor, was served with the Plan and had ample opportunity to review the Plan and to object to it. The Debtor did not seek to "sandbag [ATF] by sneaking objection" to ATF's claims into the Plan. *In re Woods*, 406 B.R. 293, 297 (Bankr.N.D.Ohio 2009). The Plan was initially filed prior to the filing of ATF's proofs of claim and the subsequent amendments did not alter the treatment of ATF's claims.[10]

---

**10.** The court acknowledges that case law exists that holds that a proof of claim filed prior to confirmation of a Chapter 13 plan constitutes a constructive objection to the plan and that the creditor can expect the claim dispute to be resolved through the claim process. *See e.g., In re Woods*, 406 B.R. 293, 297–98 (Bankr.N.D.Ohio 2009); *In re Bateman*, 331 F.3d 821, 828 (11th Cir.2003). Although in each of these cases, the court qualified its decision with additional facts (ambiguous notice in *Woods* and debtor's filing of the claim objection a year after the plan was confirmed in *Bateman* ), to the extent that these cases stand for the legal proposition that a proof of claim filed prior to confirmation trumps the provisions of a confirmed plan under § 1327(a), this court respectfully disagrees.

Construing a proof of claim filed preconfirmation as a constructive objection to a plan would constitute an end-run around the Code provisions and the rules applicable to the plan confirmation process and would create confusion. The Code and the rules provide two different, albeit related, processes to address plan confirmation issues and claim allowance issues by which creditors, debtors, and trustees must abide. A creditor or other party in interest who chooses to sleep on its rights by not objecting to a plan does so at its own peril and as long as due process requirements are met, will be bound by it. *See Espinosa*, 130 S.Ct. at 1380.

Based on the foregoing, the court grants the Debtor's objection to ATF's proofs of Claim Nos. 1, 2, and 3.

### C. Reasonable Prepetition Foreclosure Attorney Fees and Costs May Be Recovered by the Holder of an Ohio Real Estate Tax Certificate as Part of Its Prepetition Claim Under § 502

 The last issue for the court to determine as part of the contested matter is whether ATF may recover its attorney fees and costs incurred in prosecuting a prepetition foreclosure action which sought to enforce the lien granted to it under the Ohio statutes governing the sale of real estate tax certificates. The court concludes that a real estate tax certificate holder such as ATF may recover such attorney fees and costs as part of its allowed secured claim under § 502 and Ohio law as long as those fees and costs are reasonable and the value of the real estate securing such fees and costs is sufficient to cover the amount of the taxes, fees, and costs.[11]

The Debtor asserts that Claim No. 4 should be disallowed pursuant to § 1322(e), which provides that, when a debtor seeks to cure a default on a debt "on which the last payment is due after the date on which the final payment under the plan is due" pursuant to § 1325(b)(5), the arrearage must be calculated "in accordance with the underlying agreement and applicable non bankruptcy law." 11 U.S.C. §§ 1322(b)(5) & 1322(e). In particular, the Debtor contends that Claim No. 4 does not fall within the purview of § 1322(e) because no underlying agreement exists between the Debtor and ATF. ATF, on the other hand, relies solely on ORC §§ 5721.38 and 5721.39 that allow a purchaser of tax certificates to recover the costs and fees associated with a foreclosure action and does not cite any Bankruptcy Code provision in support of its argument. As explained below, because pursuant to § 502, ATF is allowed to recover the costs and fees associated with its foreclosure action, the Debtor's objection to Claim No. 4 is denied.

 As noted above, pursuant to § 502(a), a proof of claim that is timely filed is deemed allowed unless a party in

---

**11.** The Debtor has not raised the issue of the reasonableness of the attorney fees and costs, but rather, has only addressed the allowance of the attorney fees and costs on a legal basis and, therefore, the court need not address the reasonableness of the attorney fees and costs sought by ATF. Nevertheless, the amount of the fees sought appear to be reasonable. In addition, the Debtor has not raised any issue as to the value of the Property being less than the total of ATF's claims and, thus, there is no issue as to whether the attorney fees and costs are secured if they are allowed. The record appears to reflect that all of the amounts sought by ATF are secured if allowed: the appraisal filed by the Debtor on October 25, 2007 provides a value of $20,000 for the Property; the Debtor's Schedule D discloses only one non-ATF lien on the Property securing a debt of $3,960; and the total amount of ATF's proofs of claim is $11,488.43.

interest objects to it. 11 U.S.C. § 502(a). Further, pursuant to BR 3001(f), a proof of claim constitutes "prima facie evidence of the validity and amount of the claim." BR 3001(f). A party objecting to a claim bears the burden of producing sufficient evidence to rebut the presumption of validity accorded under BR 3001(f). *In re Leatherland Corp.*, 302 B.R. 250, 259 (Bankr. N.D.Ohio 2003). Section 502(b) provides in relevant part that if an objection is made:

> [T]he court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, **and shall allow such claim in such amount,** except to the extent that—[exceptions omitted]

11 U.S.C. § 502(b) (emphasis added). Accordingly pursuant to § 502 and BR 3001, a timely-filed proof of claim is presumed to be allowed.

After establishing a presumption in favor of allowance of claims asserted through timely filed proofs of claim, § 502(b) then describes nine exceptions to the allowance of claims. The Debtor has not argued that any of those exceptions apply to ATF's claims. Rather, the Debtor asserts that Claim No. 4 should be disallowed pursuant to § 1322(e).

The Debtor's reliance on § 1322(e) is misplaced. Section 1322(e) provides the governing law as to curing prepetition mortgage loan and other long-term debt defaults and states:

> Notwithstanding section (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e). According to § 1322(e), that cure amount is determined by: (1) the applicable note, mortgage, or other contractual documents, and (b) applicable nonbankruptcy law. 11 U.S.C. § 1322(e); *In re Tudor*, 342 B.R. 540, 551 (Bankr.S.D.Ohio 2005); *In re Thompson*, 372 B.R. 860, 863 (Bankr.S.D.Ohio 2007). Accordingly, the Debtor argues that since ATF's claims are not contractual in nature and relate to nonconsensual liens, § 1322(e) does not provide for such fees and costs and, therefore, they cannot be allowed.

However, a real estate tax claim does not fall within the purview of § 1322(e). First, § 1322(e) sets forth how the amount necessary to cure a default that may be cured under § 1322(b)(5) is determined. *See Tudor*, 342 B.R. at 551. Section 1322(b)(5) provides for "the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due," notwithstanding the prohibition of modification set forth in § 1322(b)(2). Thus, the cure and maintenance provision of § 1322(b)(5) applies exclusively to debts which by their own terms extend beyond the life of the plan. *In re Hussain*, 250 B.R. 502, 511 (Bankr. D.N.J.2000); *see also* 1 Lundin, Chapter 13 Bankruptcy § 4.49, at 4–49. ATF's claims under their own terms do not provide for payments beyond the life of the Plan such as a mortgage loan generally would.

Second, § 1322(e) references § 1322(b)(2). Section 1322(b)(2) prohibits modification of holders of claims *secured by a security interest* in a debtor's principal residence. As noted in *Cortner*, real estate tax liens or liens provided by the Ohio statutes relating to the sale of real

estate tax certificates are not security interests because they are not liens "created by agreement." *See Cortner,* 400 B.R. at 611 and § 101(51); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 129.1, at 129–1 to 129–2 (3d ed. 2007) ("Section 1322(b)(5) opens with the phrase 'notwithstanding paragraph (2) of this subsection,' indicating congressional intent that the power to cure defaults and maintain payments in § 1322(b)(5) is an exception to the prohibition in § 1322(b)(2) against modification of claims secured only be a security interest in real property that is the debtor's principal residence. Section 1322(b)(5) is a limited exception to the protection from modification in § 1322(b)(2)."). The foregoing makes clear that § 1322(e) is intended to address consensual arrangements only.

Third, § 1322(e) addresses the curing of defaults in a plan. In this case, while the Debtor has failed to pay the taxes and related fees due under ATF's tax certificates, only under a very liberal and expansive interpretation of "curing a default," could he be said to be curing that default through the Plan. Such an interpretation is, however, implausible. The broad array of decisions that discuss § 1322(e) address the curing of mortgage arrearage defaults or other defaults on long-term obligations involving installment payments, not "defaults" simply arising from the nonpayment of a trade debt or other similar type

of debt that comes due on a specific date. *See In re Bosteder,* 59 B.R. 878, 883 (Bankr.S.D.Ohio 1986) citing *In re Seidel,* 752 F.2d 1382, 1386 (9th Cir.1985) ("[T]he plain meaning of 'cure' as used in § 1322(b)(3) and (5), is to remedy or rectify the default and restore matters to the status quo ante.... When a debt has been accelerated, 'cure' therefore results in the reinstatement of the original payment terms of the debt. But when a debt has already naturally matured—as in Seidel's case—'cure' as defined by these courts cannot aid the debtor, since reinstatement of the original terms of the debt will merely make the debt immediately due and payable."; internal citations omitted). Moreover, although scant, the legislative history of § 1322(e) is consistent with this interpretation.[12]

Section 502 and Ohio law support ATF's recovery of prepetition reasonable attorney fees and costs incurred in a prepetition foreclosure action relating to tax liens. First, as ATF points out, ORC § 5721.38(B)(4) and (5) provide for the recovery of: a) reasonable attorney's fees if the certificate holder retained a private attorney to foreclose the lien; and b) any other costs and fees of the proceeding allocable to the certificate parcel as determined by the court or board of revision. In addition, ORC § 5721.39 allows a purchaser of a tax certificate who commences

---

12. "[Section 1322(e)] will have the effect of overruling the decision of the Supreme Court in *Rake v. Wade,* 508 U.S. 464, 133[113] S.Ct. 2187, 124 L.Ed.2d 424 (1993). In that case, the Court held that the Bankruptcy Code required that interest be paid on mortgage arrearages paid by debtors curing defaults on their mortgages. Notwithstanding State law, this case has had the effect of providing a windfall to secured creditors at the expense of unsecured creditors by forcing debtors to pay the bulk of their income to satisfy the secured creditors' claims. This had the effect of giving secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable law prohibits such interest and even when it was something that was not contemplated by either party in the original transaction. This provision ... will limit the secured creditor to the benefit of the initial bargain with no court contrived windfall. It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred." H.R. Rep. 103–834, 103rd Cong., 2d Sess. 55 (October 4, 1994).

a foreclosure action to recover attorney fees, court costs, and charges it incurs in procuring title evidence in connection with the foreclosure of its lien on property to be foreclosed. ORC § 5721.39. Accordingly, the debt arising out of such fees and costs is enforceable understate law.

Further, as noted, the Debtor has not cited any exceptions to allowance of claims under § 502(b) in support of his objection. Sections 502(b)(1) and (3) are the only exceptions that could be relevant to the allowance of ATF's claims. Subsection (b)(1) provides that a claim is to be disallowed upon objection if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." As discussed, under Ohio law such a claim for attorney fees and costs is enforceable. Subsection (b)(3) provides that a claim is to be disallowed upon objection if "such claim if for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property." The value of the Property exceeds the amount of ATF's claims and the Debtor has not made any assertion to the contrary. Thus, under § 502, ATF's claims for attorney fees and costs may be allowed.

Case law also supports the allowance of ATF's claims for attorney fees and costs related to the prepetition foreclosure action. In *In re Nunez*, 317 B.R. 666, 670–71 (Bankr.E.D.Pa.2004), the court, addressing this issue, stated that "in so far as the attorneys' fees and costs claimed due by the [t]axing [a]uthorities arose prepetition, these costs are already included in the [t]axing [a]uthorities' underlying secured claims and are secured by the tax liens." *See also In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122, 131 (Bankr. E.D.N.Y.2002) ("Interest, fees, costs and charges arising prepetition are part of the secured creditor's claim in the first instance.") and *In re Cummins Util., L.P.*, 279 B.R. 195, 201 (Bankr.N.D.Tex.2002) ("Prepetition interest and fees are allowable (if at all) as part of the underlying secured claim. In fact, the standard for allowance of interest, fees and expenses under section 506(b) is established by federal law, while like items charged prepetition are tested by applicable state law.").

Finally, through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress amended § 506(b) which only applies to post-petition attorneys fees, interests and charges,[13] to provide for such fees and charges not only with respect to consensual arrangements but also when a "State statute" provides for them. The Sixth Circuit had earlier recognized the incongruity of allowing such fees and charges with respect to consensual liens but not with respect to tax liens. *See Brentwood Outpatient, Ltd.*, 43 F.3d 256, 262 (6th Cir.1994). It would be equally or more incongruous to allow such fees and costs as part of a post-petition claim, but not as part of a prepetition allowed secured claim when State statutes provide for the recovery of such fees and costs.

Accordingly, the Debtor's objection to ATF's Claim No. 4 is overruled.

## III. CONCLUSION

The Debtor's objection to ATF's proof of claim numbers 1, 2, and 3 pertaining to the interest rate to be paid ATF on its allowed secured claims is **granted**. ATF received adequate notice of the Debtor's Plan, failed

---

**13.** *See Bondholder Comm. v. Williamson Co (In re Brentwood Outpatient, Ltd.)*, 43 F.3d 256, 259–63 (6th Cir.1994) and *In re Leather-* *land Corp.*, 302 B.R. 250, 257–58 (Bankr. N.D.Ohio 2003).

to object of confirmation of the Plan which set forth the interest rate to be applied to those claims, and is now bound by the terms of the Plan providing for the payment of interest on ATF's claims at the *Till* rate. The Debtor's objection to ATF's proof of claim number 4 pertaining to the attorney fees and costs incurred by ATF in connection with its prosecution of the prepetition foreclosure action against the Debtor's Property is **denied** because that claim is allowed pursuant to Code § 502 on the basis that it is enforceable under Ohio law and is not otherwise precluded by the Bankruptcy Code.

The court will enter a separate order consistent with this decision.

**IT IS SO ORDERED.**