In re Donald R. **CORTNER**, Debtor.

No. 07–35657.

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Feb. 4, 2009.

Lester R. Thompson, Dayton, OH, for Debtor.

**Decision Granting American Tax Funding LLC's Objection to Debtor's Chapter 13 Plan and Denying Chapter 13 Trustee's Objections to Proofs of Claim of American Tax Funding, LLC**

GUY R. HUMPHREY, Bankruptcy Judge.

The issue before the court is the proper interest rate to be paid on the secured proofs of claim of American Tax Funding, LLC (the "Creditor") within the Chapter 13 plan (the "plan") of the Debtor, Donald Cortner (the "Debtor"). The court determines that the Creditor is entitled to the

interest rate established for its claim under Ohio law.

## I. Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## II. Procedural Background

The Debtor filed a chapter 13 petition on December 18, 2007. On July 31, 2008, the Creditor objected (Doc. 41) to the Debtor's proposed amended plan (Doc. 34). The Creditor holds a lien against the Debtor's real property and, as detailed below, purchased the right to payment of delinquent real estate taxes through tax certificates obtained from an auction conducted pursuant to the Ohio Revised Code ("ORC"). The original creditor for these delinquent real property taxes was the Montgomery County Treasurer (the "Treasurer"). Under Ohio law, these tax certificates are entitled to be paid at an interest rate established by an auction, which in this instance was eighteen percent simple interest.[1] However, as explained below, the plan proposes to pay the Creditor's claims at a lower interest rate.[2] On August 12, 2008, at the confirmation hearing on the plan, the parties agreed and the court determined that the plan would be confirmed subject to this dispute being resolved by the court after briefing by the parties (Doc. 47). The confirmation order was entered on October 2, 2008 (Doc. 57).

On August 28, 2008 the Chapter 13 Trustee, Jeffrey M. Kellner (the "Trustee"), filed a memorandum in support of paying the *Till* interest rate on the Creditor's claims (Doc. 50). See *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The term "*Till* interest rate" refers to the language of 11 U.S.C. § 1325(a)(5)(B)(ii)[3], as interpreted by the United States Supreme Court, which found, in essence, § 1325(a)(5)(B)(ii) compensates a secured creditor receiving installment payments for the time value of the money owed to it plus the risk of not getting paid through a debtor's Chapter 13. The interest rate in the plan (Doc. 2, p. 7; Doc. 34) is based on the *Till* decision. On September 11, 2008, the Debtor also filed a memorandum in support of the position that the *Till* interest rate is the appropriate interest rate, rather than the eighteen percent interest rate established from the tax certificate auction (Doc. 51). On September 12, 2008, the Creditor filed a memorandum in support arguing that the Debtor must pay its claims through the plan at the interest rate provided by the tax certificate auction (Doc. 52).

On September 29, 2008, the Trustee objected to the Creditor's three proofs of claim (Proofs of Claim 16–1, 17–1 and 18–1) and seeks to have the interest paid on the Creditor's claims limited to the interest rate provided by the plan. The Creditor filed a response on October 6, 2008 (Doc. 59).

## III. Facts and Analysis

The Creditor filed three proofs of claim for delinquent taxes secured by a lien

---

**1.** Under the tax certificate auction process, the interest rate begins at eighteen percent and may go lower if bidders are willing to purchase the tax certificates at a lower interest rate. ORC § 5721.32(C).

**2.** Specifically, the plan seeks to pay the Creditor's secured proofs of claim at the prime rate of interest plus 1.5 percent, which is estab-

lished by section 8 of the plan (See Doc. 2, p. 7).

**3.** Unless otherwise noted, all statutory references are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. §§ 101–1532 (the "Code"), cited in the decision as " § ____".

against the Debtor's primary residence at 3235 Amanda Drive, Dayton, Ohio (Claims 16–1,17–1 and 18–1). The total of the three proofs of claim is $16,220.96. The Creditor seeks to be paid eighteen percent interest on these claims through the plan. This interest rate was established by a tax certificate auction according to Ohio law.[4] The Debtor seeks to modify the secured claims of the Creditor by paying the *Till* interest rate, rather than the eighteen percent.

■ First, the court notes that § 1322(b)(2)[5] does not prohibit the modification of the Creditor's secured claims. That section of the Bankruptcy Code (the "Code") prohibits the modification of a security interest in a debtor's principal residence. Thus, the initial question is whether the Creditor's tax claim is a security interest. A security interest is a "lien created by agreement." 11 U.S.C. § 101(51). In this instance, the tax lien is an involuntary lien created by operation of law and, therefore, § 1322(b)(2) would not prevent a modification or a cramdown of the interest rate owed to the Creditor. *In re Sheffield*, 390 B.R. 302, 305 (Bankr. S.D.Tex.2008).

■ Second, as referenced earlier, when a debtor pays a secured claim in installment payments, a creditor is ordinarily entitled to be compensated for the risk.

Section 1325 contains the requirements for confirmation of a chapter 13 plan. Subsection 1325(a)(5) provides the minimal treatment that a secured claim must receive if the debtor retains the creditor's collateral and the creditor does not accept the plan. Subsection 1325(a)(5)(B)(ii) provides that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]" As explained by the Supreme Court, this section is not so simple when a debtor pays in .installment payments because "[a] Debtors' promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline because the debtor pays, and there is always some risk of nonpayment." *Till*, 541 U.S. at 474, 124 S.Ct. 1951. In a plurality opinion, the Court established an interest rate of the prime rate plus a risk adjustment. *Id.* at 479–80.

New § 511 is an exception provided by Congress to the *Till* rate of interest as determined by the Supreme Court. Frequently, secured creditors being paid in installments within a Chapter 13 plan can be compelled to accept payments with interest computed and paid based on *Till*.[6] However, under the Bankruptcy Abuse

---

4. ORC § 5721.32 details the procedure for the auction of tax certificates. Pursuant to Section (C) of § 5721.32, the auction begins at eighteen percent simple interest. The Creditor indicates this procedure is how they purchased these tax certificates (Doc. 41, p. 2). A county treasurer can also apparently negotiate with certain persons for the sale of tax certificates. ORC § 5721.33. If a holder of a tax certificate cannot collect on it, a foreclosure eventually ensues pursuant to the requirements of ORC § 5721.37.

5. Section 1322(b)(2) states, in relevant part, that "[s]ubject to subsections (a) and (c), the

plan may ... modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...."

6. There are other statutory exceptions to paying secured creditors at an interest rate based on *Till*. One such exception is for claims secured by a security interest in the debtor's principal residence, for which the creditor is entitled to be paid at its contract rate of interest. *See* § 1322(b)(2) and *In re Allen*, 75 B.R. 344, 346 (Bankr.S.D.Ohio 1987).

Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress added § 511 to the Code to address the rate of interest on tax claims, which states:

(a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

(b) In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.

There is no doubt in this case that the Creditor has a "claim" as defined by § 101(5).[7] Further, the record demonstrates the filed proofs of claim represent real property taxes owed by the Debtor that were purchased from the Treasurer through tax certificates. Thus, the record bears out that the Creditor's claim is a "tax claim" as that term is used in § 511.

Under the plain language of § 511, the Creditor is entitled to the interest rate as determined under "applicable nonbankruptcy law", which in this instance is Ohio law. Section 1325(a)(5)(B)(ii) requires that "the value as of the effective date of the plan, of property to be distributed under the plan on account of such claim [be] not less than the allowed amount of such claim." As interpreted by the Supreme Court in *Till,* this provision requires the payment of interest to the claimant. Section 511 requires in such circumstances (i.e. where "any provision of this title requires ... the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim ...."), that "applicable nonbankruptcy law" be applied to determine the rate of interest. In short, § 511 defers to Ohio law to calculate the proper interest rate to be paid on the Creditor's proofs of claim and Ohio law establishes that the Creditor is entitled to the interest rate established by the tax certificate auction on the Debtor's delinquent real estate taxes.

 The Creditor holds a "tax claim" within the meaning of § 511 and not merely a lien against the property. The Trustee argues that the Creditor, as successor to the Treasurer's interest, merely holds a secured claim and not a tax claim because the Creditor is not a governmental entity to whom the claim is owed. It is true that the Ohio tax certificate statutes reference the transfer of the lien on the real property to the tax certificate purchaser. However, under Ohio law, the holder of tax certificates does not pay a county treasurer for the taxes and in turn hold a completely new debt with a lien against the real estate. Rather, under Ohio law, from the language chosen by the Ohio legislature in creating the procedures for the sale of tax certificates, the delinquent taxes are transferred and, therefore, the Creditor's claim is a tax claim.[8] The last sentence of

---

7. Code § 101(5) provides that " 'claim' means ... right to payment....".

8. Specifically, ORC § 5721.32(E)[8] states in part

(E) Upon receipt of the full payment of the certificate purchase price from the purchaser, the county treasurer shall issue the tax certificate and record the tax certificate sale by entering into a tax certificate register the certificate purchase price, the certificate rate of interest, the date the certificate was sold, the name and address of the certificate holder, and any other information the county treasurer considers necessary. The county treasurer may keep the tax certificate register in a hard-copy format or in an electronic format. The name and address of the certificate holder may be, upon receipt of instructions from the purchaser,

ORC § 5721.32(E) refers to both a transfer of the taxes and the "superior lien of the state" to the certificate holder.[9] Thus, the "claim" of the Creditor—as defined by § 101(5)—represents delinquent taxes purchased under Ohio law by the certificate holder and, therefore, must be paid according to Ohio law. 11 U.S.C. § 511. Unlike other jurisdictions which have statutes to allow state entities to recoup delinquent real estate taxes, it is not only the lien that is being transferred, but the amount owed for delinquent taxes.[10]

 Further, as another reported decision noted, § 511, unlike other sections of the Code, is not limited to government units, but instead uses the broad term "creditor." *In re Davis*, 352 B.R. 651, 654 (Bankr.N.D.Tex.2006). *See also Norton Bankruptcy Law and Practice*, Vol. 3, § 54:1 (3rd Ed. Jan. 2008). Had Congress intended this provision only apply to governmental units holding such claims, it could have easily referred to "governmental units" instead of "creditor".[11]

In addition, the debt represented by an Ohio tax certificate bears all the hallmarks of a typical real estate tax debt under Ohio law. Although other state statutes are more transparent on the particular point of real estate taxes being transferred to the purchaser[12], the debt in question, if un-

---

that of the secured party of the actual purchaser, or an agent or custodian for the purchaser or secured party. The county treasurer also shall transfer the tax certificate to the certificate holder. The county treasurer shall apportion the part of the proceeds from the sale representing taxes, penalties, and interest among the several taxing districts in the same proportion that the amount of taxes levied by each district against the certificate parcel in the preceding tax year bears to the taxes levied by all such districts against the certificate parcel in the preceding tax year, and credit the part of the proceeds representing assessments and other charges to the items of assessments and charges in the order in which those items became due. Upon issuing a tax certificate, the delinquent taxes that *make up the certificate purchase price are transferred, and the superior lien of the state and its taxing districts for those delinquent taxes is conveyed intact to the certificate holder.* (emphasis added).

9. Similar language can be found in Ohio Revised Code § 5721.32(G).

10. See *In re Prevo*, 393 B.R. 464, 471 (Bankr. S.D.Tex.2008) (court determining that the state laws of Kentucky and Pennsylvania allow for the purchases of tax claims, but Texas law does not). The procedures for the privatization of delinquent real estate taxes takes many different forms depending on the state law at issue. Frank S. Alexander, *Tax Liens, Tax Sales, and Due Process*, 75 Ind. L.J. 747, 772–74 (Summer 2000). The court does not intend to comment on the meaning of any other state's tax privatization sale law and its intersection with § 511.

11. *Congress appears to have little difficulty limiting sections of the Bankruptcy Code to government units.* See, e.g., § 507(a)(8), with limitations delineated in that section, creates a priority tax claim for "allowed unsecured claims of government units." Section 507(a)(8) debts are also non-dischargeable pursuant to § 523(a)(1)(A). Section 525 prohibits various forms of discriminatory treatment against a debtor by a "government unit." Section 1222(a)(2)(A) removes the priority status of claims of government units in a Chapter 12 where the claim arose from "the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation[.]" See also § 101(27) (definition of the term "government unit"). All of these sections existed prior to the enactment of § 511 as part of BAPCPA. Furthermore, § 1129(a)(9)(D), added as part of BAPCPA, provides for the payment of secured tax claims of government units, which would otherwise be allowed as a § 507(a)(8) priority claim, in the manner established for § 507(a)(8) claims in Chapter 11 by § 1129(a)(9)(C).

12. See *Prevo*, 393 B.R. at 471 (including citations and quoting the statutory language to analogous statutes under Kentucky and Pennsylvania law which transfer tax claims to private parties).

paid, is treated similarly to the failure to pay delinquent real estate taxes to the county treasurer—a foreclosure at some point will occur. The tax certificate holder also receives a super-priority lien under state law—the same treatment given delinquent real estate taxes to the county treasurer.[13] Once a political subdivision of the state auctions a tax certificate, that political subdivision transfers its lien position to the tax certificate holder. Although it may not be true that a tax certificate represents a simple assignment of the tax debt, the result of the Ohio tax certificate statutory scheme [ORC §§ 5721.30–5721.46] is that the certificate holder becomes the party with standing to collect those taxes or initiate foreclosure proceedings, pursuant to its first lien position.[14] Additionally, the owner of the real property retains redemption rights analogous to an ordinary tax foreclosure sale by a political subdivision of the state.[15] In short, although the procedures to collect under a tax certificate differ somewhat from the traditional collection of real estate taxes by a political subdivision of·the state, the procedures create similar rights for both the owner of the real property and the holder of the tax certificates that exist in a traditional Ohio tax sale. Even if the Ohio tax certificate law does not represent a direct transfer of the delinquent taxes from a political subdivision of the state to a certificate holder, this statutory scheme shows, at a minimum, that an Ohio tax certificate represents taxes owed by the Debtor as the current title owner of the real property. See, e.g., *Donofrio v. Emerson Ltd. P'ship*, 2008 WL 4650741 (Ohio App. Oct. 22, 2008) ("When the Emerson Family Limited Partnership failed to pay its property taxes, the Summit County fiscal office sold certificates for the amounts owed.").

■ Finally, recently enacted ORC § 5721.37(A)(3)(c) does not compel a different conclusion. The Debtor asserts that this recently enacted provision requires that the *Till* rate be applied. Specifically, ORC § 5721.37(A)(3)(c) was added to state: "Interest at the certificate rate of interest continues to accrue during any extension of time provided by division (A)(3)(a) or (b) of this section unless otherwise provided for under Title 11 of the United States Code." However, a contextual reading of this provision does not lead the court to conclude that the Code controls the interest rate for tax certificates. ORC subsections 5721.37(A)(3)(a), (b) and (c) provide for specific adjustments to account for a bankruptcy.[16] Subsection (c)

13. ORC § 5721.32(E) provides that the superior lien of the state is transferred to the certificate holder.

14. See ORC § 5721.37(B) allowing the certificate holder to foreclose after, among other procedures, paying other delinquent taxes and related fees along with other tax certificates (not held by the certificate holder) and ORC § 5721.37(G) allowing for a foreclosure procedure by a private attorney on behalf of a certificate holder.

15. Cf. ORC § 5721.38 concerning redemption rights relating to tax certificates and ORC § 5721.25 concerning redemption rights relating to a tax sale by a political subdivision of the state.

16. Section 5721.37(A)(3) states that
"(a) With respect to a tax certificate purchased under section 5721.32 of the Revised Code, or under section 5721.42 of the Revised Code by the holder of a certificate issued under section 5721.32 of the Revised Code, if, before the expiration of six years after the date a tax certificate was sold, the owner of the property for which the certificate was sold files a petition in bankruptcy, the county treasurer, upon being notified of the filing of the petition, shall notify the certificate holder by ordinary first-class or certified mail or by binary means of the filing of the petition. It is the obligation of the certificate holder to file a proof of claim with the bankruptcy court to protect the holder's interest in the certificate parcel. The last day on which the

specifically provides that the tax certificate interest rate continues to accrue during a bankruptcy unless Title 11 provides otherwise.

The Debtor's argument fails for the following reasons. First, Title 11, i.e. the Code, does not provide state law should not be applied, rather § 511 unequivocally requires this court to apply the interest rate established by state law. The language in ORC § 5721.37(A)(3)(c) provides no principled basis to apply one section of the Code addressing interest rates for secured creditors in Chapter 13, i.e. § 1325(a)(5)(B)(ii), and to ignore § 511, a more specific section of the Code written to address the sole issue of determining the interest rate on tax claims. Second, the language of ORC § 5721.37(A)(3)(c), "unless otherwise provided for by Title 11 of the United States Code" can best be understood as ensuring Ohio law did not conflict with the Code as to the accruing of interest during a bankruptcy. At present, there is no such concern because § 511 plainly directs the bankruptcy courts to defer to state law to establish the interest rate on a tax claim and, like any secured claim in Chapter 13, the Creditor is enti-

tled to be paid interest on its claims. Accordingly, ORC § 5721.37(A)(3)(c) does not provide a basis to modify the Creditor's interest rate under Ohio law for a secured tax certificate claim by ignoring the plain language of § 511.

## IV. Conclusion

American Tax Funding LLC's objection to confirmation (Doc. 41) is sustained and the Chapter 13 Trustee's objections (Docs. 53, 54 and 55) to the proofs of claim of American Tax Funding, LLC (15–1, 16–1 and 17–1) are denied. An order consistent with this decision will be entered.

**IT IS SO ORDERED.**

certificate holder may file a request for foreclosure or the private attorney may file a notice of intent to foreclose is the later of six years after the date the certificate was sold or one hundred eighty days after the certificate parcel is no longer property of the bankruptcy estate; however, the six-year period measured from the date the certificate was sold is tolled while the property owner's bankruptcy case remains open.
(b) With respect to a tax certificate purchased under section 5721.33 of the Revised Code, or under section 5721.42 of the Revised Code by the holder of a certificate issued under section 5721.33 of the Revised Code, if, before six years after the date a tax certificate was sold or before the date negotiated by the county treasurer, the owner of the property files a petition in bankruptcy, the county treasurer, upon being notified of the filing of the petition, shall notify the certificate holder by ordinary first-class or certified mail or by binary means of the filing of the petition. It is the obligation of the certificate holder to file a proof of claim with the bankruptcy court to protect the holder's interest in the certificate parcel. The last day on which the certificate holder may file a notice of intent to foreclose is the later of six years after the date the tax certificate was sold or the date negotiated by the county treasurer, or one hundred eighty days after the certificate parcel is no longer property of the bankruptcy estate; however, the six-year or negotiated period being measured after the date the certificate was sold is tolled while the property owner's bankruptcy case remains open.
(c) Interest at the certificate rate of interest continue to accrue during any extension of time required by division (A)(3)(a) or (b) of this section unless otherwise provided for under Title 11 of the United States Code."