RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

IN RE: MICHAEL ALLEN BOWERS; MARGARITA VILLE BOWERS,

*Debtors*.

---

PLYMOUTH PARK TAX SERVICES, LLC,

*Appellants*,

*v.*

MICHAEL ALLEN BOWERS; MARGARITA VILLE BOWERS,

*Appellees*.

No. 13-4404

Appeal from the United States District Court
for the Northern District of Ohio at Akron
No. 12-51549—No. 12-51549.

Argued: June 18, 2014

Decided and Filed: July 21, 2014

Before: KEITH, CLAY, and McKEAGUE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Scott W. Paris, KEITH D. WEINER & ASSOCIATES CO., LPA, Cleveland, Ohio, for Appellant. Robert M. Whittington, Jr., Akron, Ohio, for Appellee. **ON BRIEF:** Scott W. Paris, KEITH D. WEINER & ASSOCIATES CO., LPA, Cleveland, Ohio, for Appellant. Robert M. Whittington, Jr., Akron, Ohio, for Appellee.

1

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge.   Plymouth Park appeals the Bankruptcy Court's Order which held that under Ohio law, the interest rate a Chapter 13 debtor must pay under his plan during the pendency of a bankruptcy proceeding to a tax certificate holder is the "certificate rate of interest" shown on the face of the tax certificate.  Plymouth Park alleges that the appropriate interest rate is 18%, as provided in Ohio Revised Code ("O.R.C.") § 5721.38 (2010), instead of 0.25%, the rate provided in the tax certificate.  This is an issue of first impression for this Circuit. For the reasons set forth below, we hold that the Bankruptcy Court was correct and **AFFIRM**.

**I.**

We begin with a brief overview of Ohio tax lien law.  When real estate taxes are not paid by a property owner, a tax lien attaches to the subject property, annually, on the first of every January, which includes interest, penalties, and other fees accrued until paid.  O.R.C. § 323.11. Summit County and several other Ohio counties sell outstanding tax obligations to investors in the form of tax lien certificates ("tax certificates").   O.R.C. § 5721.[1]   By selling these tax certificates, the county creates much needed revenue from unpaid property taxes.  The investor purchasing a tax certificate obtains a lien against the taxpayer's property and the right to pursue the taxpayer for unpaid taxes. O.R.C. § 5721.30–.43.

The tax certificate entitles the tax certificate holder to the first lien on the property. O.R.C. § 5721.32.   Property owners are given notice of the opportunity to redeem the tax certificate and thereby remove the lien by paying the certificate holder the purchase price plus interest, penalties, and costs pursuant to O.R.C. § 5721.32.  The tax certificate holder also has the

———————————

[1]As an initial matter, it is important to note what version of the Ohio Revised Code is being referenced. The version of the O.R.C. applicable to this case is the version effective on November 3, 2010, the date the tax certificate was purchased. *See CapitalSource Bank FBO Aeon Fin., L.L.C. v. Donshirs Dev. Corp.*, No. 99032, 2013 WL 1697492, at *5 (Ohio Ct. App. April 18, 2013) (stating that the trial court "erred" when it applied the version of the O.R.C. effective at the time of foreclosure instead of the version effective at the time the tax certificate was purchased); *Eastwood Local School Dist. v. Eastwood Educ. Ass'n*, 875 N.E. 2d 139, 143 (Ohio Ct. App. 2007) ("Except where a contrary intent is evident, the parties to a contract are deemed to have contracted with reference to existing law.").  Unless stated otherwise, the Ohio Revised Code referenced in the opinion is the version in effect on November 3, 2010.

right, after complying with all statutory requirements, to initiate foreclosure proceedings on the real property after one year passes from the tax certificate purchase date, but no later than the end of the certificate period, which is six years. *Id.* To initiate foreclosure, the certificate holder must file a notice of intent to foreclose with the county treasurer. O.R.C. § 5721.37. The tax certificate holder can file its notice of intent to foreclose as long as the property owner has not "redeemed" (i.e., paid off) the certificate. *Id.*

The facts of this case are not in dispute. Michael Allen Bowers and Margarita Ville Bowers (the "Debtors") allowed the taxes to become delinquent on their property located in Akron, Ohio. After the Debtors became delinquent on their taxes, the Summit County Treasurer held a tax certificate sale and Plymouth Park Tax Services ("Plymouth Park") purchased two delinquent tax certificates pursuant to statute. The first tax lien certificate (Certificate #1) was filed on November 5, 2010 with the Summit Count Fiscal Officer indicating a purchase price of $4,083.73 with a negotiated interest rate of 0.25%. On October 3, 2011, the second tax lien certificate (Certificate #2) was filed with the Summit County Fiscal Officer indicating a purchase price of $2,045.44 with a negotiated interest rate of 18.00%. Both of these certificates are titled "Tax Certificate (Negotiated sale)." R. 32, Stipulation as to Undisputed Facts at 7–9.[2] The certificates are signed by the "Treasurer/Fiscal Officer or Designee," Shelly Davis, who certified: "I do hereby certify that at a negotiated sale pursuant to O.R.C. § 5721.33 this tax certificate for the parcel listed below was offered and sold . . . ." *Id.*

Both certificates also state that "[t]his certificate will be canceled six years after the date of delivery pursuant to Ohio Revised Code 5721.37, unless the date is extended because of bankruptcy pursuant to O.R.C. 5721.37(A)(3)(b)." *Id.* The tax certificates stated that "[t]he purchaser of this Tax Certificate or any transferee is entitled to file a notice of intent to foreclose on this parcel within six years after the purchase of the Tax Certificate, or by the date negotiated with the county treasurer." *Id.*

On April 17, 2012, the Summit County Fiscal Officer filed a tax lien foreclosure complaint against the Debtors. The complaint was filed "pursuant to a request for foreclosure

---

[2]Any reference to docket numbers refers to the Bankruptcy Court docket (Case No. 12-51549).

form sent to the Fiscal Officer by Plymouth [Park]." *Id.* at 2, ¶ 6. The foreclosure complaint stated that "as provided by Section 5721.38(b) of the Ohio Revised Code" the "redemption price" calculated by the Fiscal Officer was $10,585.82. *Id.* at ¶ 6; at 11, Ex. D.

On May 10, 2012, the Debtors filed their Chapter 13 plan and petition. R. 1, Chapter 13 Petition. The Debtors did not file any notice to "redeem" their property during the pendency of the bankruptcy action. Rather, the Chapter 13 petition and "payment plan" was the plan filed by the Debtors pursuant to the Bankruptcy Code. 11 U.S.C. § 1321. The Debtors' Chapter 13 plan proposed to pay interest on Plymouth Park's tax certificates at the interest rates listed on those certificates: 0.25% on Certificate #1 and 18.00% on Certificate #2. R. 3, Chapter 13 Plan Filed by Debtor Michael Bowers at 3. On May 23, 2012, Plymouth Park filed a proof of claim based on both certificates in the amount of $10,521.46, an amount that included $2,120.00 in fees and the principal balance of $7,781.19 plus 18% interest on both certificates from June 1, 2012. Accordingly, the Debtors' plan and Plymouth Park's claim put the parties at odds: while the Debtors sought an interest rate of 0.25% on Certificate #1 and 18% on Certificate #2, Plymouth Park demanded that the Debtors pay 18% on both certificates.

The Bankruptcy Court held an Evidentiary Hearing on August 16, 2012 where testimony was taken regarding the procedures and fees involved in Summit County's tax lien foreclosure process. On December 5, 2012, the Bankruptcy Court ordered the parties to file additional briefs "regarding the applicability and/or inapplicability of Ohio Revised Code § 5721.38 to the issues before the Court, specifically to what extent, if any, a debtor's chapter 13 plan treatment of the tax certificate holder's claim should be equated with the process of redemption contemplated by § 5721.38." R. 44, Order Directing Parties to File Briefs at 1. The parties filed their respective briefs.

On March 22, 2013, the Bankruptcy Court entered its Order and Memorandum Opinion overruling and sustaining in part both Plymouth Park's Objection to Confirmation and Debtors' Objection to Proof of Claim. The Bankruptcy Court agreed with Plymouth Park that Plymouth Park's claim was a tax claim[3] under 11 U.S.C. § 511 and that state law governed the interest rate

---

[3]Neither party now disputes that this claim is a "tax claim" under federal law. In 2005, under the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), Congress included a provision for Interest on Tax Claims, 11 U.S.C. § 511(a), which provides:

at issue.  However, the Bankruptcy Court rejected the proposition that the 18% rate in O.R.C. § 5721.38(B) should apply to the Debtors' plan.  The Bankruptcy Court stated:

> According to Ohio Revised Code § 5721.38(B)(2), the owner of the property "may redeem the parcel by paying . . . interest on the certificate purchase price for each tax certificate sold respecting the parcel at the rate of eighteen per cent per year."  The debtors allege that Ohio Revised Code § 5721.38(B) is limited to those instances where "a party redeems real estate from a certificate sale by paying cash to the county treasurer."  Debtors' Reply at 1.  The debtors further allege that this redemption does not contemplate "redemption by way of periodic payments as in a chapter 13 plan."  December 14, 2012 Brief at 4.  The Court agrees.  Creditor has not established, and the Court finds no support for, the contention that the negotiated interest rate does not apply.  Here, the debtors are not redeeming their property as contemplated by Ohio Revised Code § 5721.38(B); therefore, the statute does not apply.

R. 51, Bankruptcy Ct. Order and Memo. Op. at 4.

The Bankruptcy Court further explained: "Moreover, 'Ohio law establishes that the Creditor is entitled to the interest rate established by the tax certificate auction on the Debtor's delinquent real estate taxes.'"  *Id.* (quoting *In re Cortner*, 400 B.R. 608, 612 (Bankr. S.D. Ohio 2009)).  The Court thus held that the appropriate interest rate for Certificate #1 was 0.25%, the rate listed on the tax certificate.

Plymouth Park timely appealed to the Bankruptcy Appellate Panel ("BAP") on April 2, 2013.  After hearing oral arguments, the BAP issued an opinion affirming the Bankruptcy Court's order. *In re Bowers*, 506 B.R. 249 (B.A.P. 6th Cir.). The BAP concluded that the 0.25% interest rate on Certificate #1 should apply. Applying the 2010 O.R.C. § 5721.37(a)(3)(b) and (c) to the case, the BAP concluded that the 0.25% interest rate listed on the tax certificate was the "certificate rate of interest" and continued to accrue during the pendency of the bankruptcy action. O.R.C. § 5721.37(A)(3)(c).

Plymouth Park timely appealed.

---

If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the *rate of interest shall be the rate determined under applicable nonbankruptcy law*.

(emphasis added).

**II.**

The Court reviews the decision of the bankruptcy court directly, giving no deference to the decision of the BAP. *Dickson v. Countrywide Home Loans (In re Dickson)*, 655 F.3d 585, 589–90 (6th Cir. 2011). The Court reviews conclusions of law, such as a bankruptcy court's interpretation of state law, *de novo. Id. De novo* review requires the appellate court to determine the law at issue independently of the Bankruptcy Court's determination. *Hamerly v. Fifth Third Mortg. Co. (In re J & M Salupo Dev. Co.)*, 388 B.R. 795, 800 (B.A.P. 6th Cir. 2008) (citing *First Union Mortg. Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998)).

A.  Overview of Parties' Arguments

The parties approach the issue at hand in two distinct ways. The Debtors claim that O.R.C. § 5721.37(A)(3)(b) provides the answer to the question of what interest rate applies to the tax certificate during the pendency of the Debtors' Chapter 13 bankruptcy. That section addresses when a tax certificate holder may file for foreclosure and also provides the guidelines for how the filing of bankruptcy effects the tax certificate holder's rights to foreclose. The Debtors claim that O.R.C. § 5721.37(A)(3)(c) mandates that interest on the tax certificate accrues at the "certificate rate of interest" (the interest listed on the tax certificate) during any pending bankruptcy claim.

Plymouth Park approaches the issue differently—by relying on O.R.C. § 5721.38, which addresses a taxpayer's right to "redemption." Section 5721.38 allows a taxpayer to redeem a parcel after the filing of a notice of intent to foreclose by paying the county treasurer a set amount. The Debtors did not seek to "redeem" their property, as set forth in the statute. However, Plymouth Park contends that the 18% statutory interest applies because they filed the notice of intent to foreclose and the Debtors did not redeem the property. Plymouth Park contends that even if a formal redemption is required to trigger the 18% statutory interest, the bankruptcy "payment plan" could constitute such a redemption.

Because these two approaches are distinct, we lay out the Debtors' and Plymouth Park's approaches separately.

B. Debtors' Interpretation of O.R.C. § 5721.37(A)(3)(b)

As the Bankruptcy Appellate Court correctly noted, the Ohio Revised Code's tax certificate provisions specifically address situations where delinquent taxpayers file for bankruptcy protection. O.R.C. § 5721.37(A)(3)(b), effective when the tax certificate was purchased on November 3, 2010, stated:

> If, before six years after the date a tax certificate was sold or before the date negotiated by the county treasurer, the owner of the property files a petition in bankruptcy, the county treasurer, upon being notified of the filing of the petition, shall notify the certificate holder by ordinary first-class or certified mail or by binary means of the filing of the petition. It is the obligation of the certificate holder to file a proof of claim with the bankruptcy court to protect the holder's interest in the certificate parcel. The last day on which the certificate holder may file a notice of intent to foreclose is the later of six years after the date the tax certificate was sold or the date negotiated by the county treasurer, or one hundred eighty days after the certificate parcel is no longer property of the bankruptcy estate; however, the six-year or negotiated period being measured after the date the certificate was sold is tolled while the property owner's bankruptcy case remains open.

O.R.C. § 5721.37(A)(3)(b) (current version at O.R.C. § 5721.37(A)(2) (2011)). In essence, O.R.C. § 5721.37(A)(3)(b) places a six-year statute of limitations period running from the date of sale or negotiation of the tax certificate in which the tax certificate holder must file a notice of intent to foreclose. As the BAP noted, "if a taxpayer filed for bankruptcy at some point within those six years and the certificate holder filed a claim with the bankruptcy court, then the six year period would be tolled 'while the property owner's [the taxpayer's] bankruptcy case remains open.'" *In re Bowers*, 506 B.R. 249, 255 (B.A.P. 6th Cir.) (alteration in original) (quoting O.R.C. § 5721.37(A)(3)(b)).

The statutory provision immediately following this section, O.R.C. § 5721.37(A)(3)(c), provides that "[i]nterest at the certificate rate of interest continues to accrue during any extension of time required by division (A)(3)(a) or (b) of this section unless otherwise provided under Title 11 of the United States Code." Accordingly, the Debtors argue that during the six years running from the date of the sale of the tax certificate to Plymouth Park, and during the pendency of the Debtors' Chapter 13 case, interest accrues on the certificate at the "certificate rate of interest." As defined by O.R.C. § 5721.30(G), the "certificate rate of interest" is the "rate of simple interest

per year not to exceed eighteen per cent per year fixed . . . by the county treasurer with respect to any tax certificate sold or transferred pursuant to a negotiated sale under section 5721.33 of the Revised Code." *See In re Cortner*, 400 B.R. 608, 614–15 (S.D. Ohio 2009). The "certificate rate of interest" on Certificate #1 is 0.25%.

Plymouth Park rebuts this reading of the statutory scheme with a few arguments. First, Plymouth Park argues that O.R.C. § 5721.37(A)(3)(b) is inapplicable to the facts of this case. Plymouth Park correctly notes that it filed its notice of intent to foreclose on February 10, 2012, three months prior to the initiation of the Debtors' bankruptcy proceedings. Plymouth Park contends that because they had filed a notice of intent to foreclose, there would be no basis to toll the filing of that notice, and the 18% statutory interest rate would apply. Plymouth Park argues that the interest set forth in O.R.C. § 5721.38(B) attaches with the filing of a Notice of Intent to Foreclose pursuant to O.R.C. § 5721.37 and § 5721.38. The notice of intent to foreclose was filed on February 10, 2012, and Plymouth Park claims 18% statutory interest attached to the subject certificate at that time. O.R.C. § 5721.38(B).

Plymouth Park's reading of the statute, however, assumes a fact: that the filing of a notice of intent to foreclose forces the early expiration of the six-year period and triggers the application of the 18% interest rate. The BAP noted this assumption and held that the 2010 Ohio Revised Code contained no indication that the "six year period for certificate holders to initiate the foreclosure process against taxpayers somehow expires early when a notice of intent to foreclose is filed." *In re Bowers*, 506 B.R. 249, 255 n.5 (B.A.P. 6th Cir.). The BAP went on to state:

> In fact, it appears that the six year period survives the filing of a notice of intent to foreclose and the initiation of foreclosure proceedings and continues to provide important limitations on the rights of both tax certificate holders and taxpayers. For example, if a tax certificate holder files a notice of intent to foreclose but has its foreclosure action dismissed without prejudice, it can file another notice of intent to foreclose, but must do so before the six year period ends. *See Lakeview Holding, L.L.C. v. DeBerry*, No. 99033, 2013 WL 1501640, at *1 (Ohio Ct. App. April 11, 2013) ("[T]he certificate has not expired and the six year statute of limitations had not yet expired . . . [the tax certificate holder] may therefore simply refile its notice of intent . . . .").

*Id.*

Plymouth Park has not pointed to any statutory provision or case which provides a basis for assuming that the filing of a notice of intent to foreclose triggers an early expiration of the six year period. While no case law on a particular subject is certainly not grounds for foreclosing Plymouth Park's statutory reading of O.R.C. § 5721.37(A)(3)(b), further reasons support the Debtors' interpretation of the relevant statutory provisions. As the BAP noted in its opinion, the Court of Appeals of Ohio in *Lakeview Holding, L.L.C. v. DeBerry* applied the six year limitation period to the case, even though the tax certificate holder had filed a notice of intent to foreclose. *Lakeview Holding, L.L.C. v. DeBerry*, No. 99033, 2013 WL 1501640, at *1 (Ohio Ct. App. Apr. 11, 2013). While the factual situation in *Deberry* did not involve a bankruptcy filing after a notice of intent to foreclose, the case involved the filing of a notice of intent to foreclose. If Plymouth Park's reading of O.R.C. § 5721.37(A)(3)(b) was correct, the court in *Deberry* would not be concerned about the six year limitation period, because the filing of the notice of intent to foreclose would mean the six year limitation expired early. However, the court in *DeBerry*, after the notice of intent to foreclose was dismissed because the foreclosure complaint was not timely filed, continued to consider O.R.C. § 5721.37(A)(3)(b) and the six year limitation period, irrespective of the filing of the notice of intent.

We hold that O.R.C. § 5721.37(A)(3)(b) applies to the instant case. As the Bankruptcy Court and the BAP correctly stated, the 0.25% interest rate on the face of the tax certificate is the "certificate rate of interest" and continues to accrue during the extension of time because of the bankruptcy filing. *In re Bowers*, 506 B.R. 249, 255–56 (B.A.P. 6th Cir.). Applicable Ohio law (O.R.C. § 5721.37(A)(3)(b)),[4] therefore, imposes an interest rate of 0.25% on Plymouth Park's

---

[4]The BAP aptly noted that the result of this case remains the same under current Ohio law:

> The Ohio Legislature's 2011 amendments to O.R.C. § 5721.37 replaced O.R.C. § 5721.37(A)(3)(b) and O.R.C. § 5721.37(A)(3)(c) with current O.R.C. § 5721.37(A)(2), a division identical to the divisions it replaced except that the six year period in the 2010 O.R.C. has been replaced by the term "certificate period." Ohio Rev. Code Ann. § 5721.37(A)(2). That term is defined in current O.R.C. § O.R.C. 5721.30(Q) as "the period of time after the sale or delivery of tax certificate within which a certificate holder must initiate an action to foreclose the tax lien represented by the certificate . . . ." Ohio Rev. Code Ann. § 5721.30(Q). Under both the 2010 and current statute a certificate holder has a certain period of time in which to foreclose, that period of time is tolled during a taxpayer's bankruptcy case, and interest accrues during the tolling period at the certificate rate of interest. Were the current version of O.R.C. § 5721.37 to apply to this case, the "certificate period" would be tolled while the Debtors' bankruptcy case remains open, and during that time interest would accrue at the "certificate rate of interest," or 0.25%.

*In re Bowers*, 506 B.R. 249, 256 n.7 (B.A.P. 6th Cir.)

claim while the Debtor's bankruptcy case remains open. O.R.C. § 5721.37(A)(3)(b) controls the answer to the question of what interest rate should apply to Certificate #1: namely the certificate rate of interest listed on the face of Certificate #1.

C.  Plymouth Park's Interpretation of O.R.C. § 5721.38

Plymouth Park maintains that O.R.C. § 5721.38 guarantees it an 18% interest rate on its claim.  Plymouth Park argues that because the Debtors did not redeem (i.e., pay off) the certificates at issue before or after Plymouth Park filed the notice of intent to foreclose, the 18% statutory interest set forth in O.R.C. § 5721.38 attached to Certificate #1.  Plymouth Park believes that the statutory interest listed in O.R.C. § 5721.38 does not require a redemption to be formally sought.  However, Plymouth Park argues that assuming that the statutory rate of interest were dependent on redemption, this Court should hold that the Debtors' Chapter 13 Bankruptcy payment plan constitutes "redemption" as contemplated by Ohio Revised Code § 5721.38.

This section allows a taxpayer to redeem a parcel after the filing of a notice of intent to foreclose by paying the county treasurer an amount equal to the total of the "certificate redemption prices" of all tax certificates respecting the parcel, certain fees and costs, and "interest on the certificates at the rate of eighteen per cent per year for the period beginning on the date on which the payment was submitted by the certificate holder [to initiate foreclosure proceedings] and ending on the day the parcel is redeemed under this division."  O.R.C. § 5721.38(B)(2).  Under Plymouth Park's reading, because the Debtors filed the notice of intent to foreclose and the Debtors did not redeem the property, the 18% statutory interest applies.

There are a few problems with Plymouth Park's interpretation of O.R.C. § 5721.38(B). The statute states that the interest on the tax certificate is in connection to the taxpayer seeking to redeem their property. O.R.C. § 5721.38(B)(2).  The statute does not state that the mere filing of a notice of intent to foreclose triggers the 18% interest rate on the tax certificate.  Rather, O.R.C. § 5721.38(B)(2) makes clear that at any time after "payment to the county treasurer by the certificate holder to initiate foreclosure proceedings . . . and before the filing of the entry of confirmation of sale of a certificate parcel . . . and before the decree conveying title to the certificate holder . . . the owner of record of the certificate parcel . . . may redeem the parcel by paying to the county treasurer the sum of the following . . . ."  The statute then proceeds to list

the items which the taxpayer must pay, including the tax certificate amount, the interest on the tax certificate, plus interest at a rate of 18% per year for the period beginning on the day when the payment was submitted by the certificate holder and ending on the day when the parcel is redeemed. *Id.* The parties both admit that a foreclosure decree was never issued in the instant case. Ohio caselaw remains clear that in order for a foreclosure judgment to be a "final order," the decree must be issued and address the rights of all lienholders and the responsibilities of the mortgagor. *CitiMortgage, Inc. v. Roznowski*, ---N.E.2d----, 2014 WL 1924774, at *5 (Ohio May 15, 2014); *Countrywide Home Loans Servicing v. Nichpor*, 990 N.E.2d 565 (Ohio 2013) (holding that after a judgment entry grants a decree of foreclosure and order of sale, the foreclosure action cannot be dismissed, as the judgment is final). Accordingly, Plymouth Park's interpretation of the statute appears to be at odds with the statutory language. The statute makes clear that the interest rate attaches to the actual "redemption" of the property by the taxpayer. As the Debtors did not attempt to redeem the property here, and no foreclosure decree has been issued, Plymouth Park's reading is simply untenable given the language of O.R.C. § 5721.38(B).

Plymouth Park next suggests that if "redemption" is required to trigger the 18% interest rate, the institution of the Chapter 13 bankruptcy proceedings and the payment plan in place for the bankruptcy may constitute a "redemption." Plymouth Park is correct that there is no case law addressing this particular issue—whether a Chapter 13 bankruptcy payment plan constitutes a "redemption" as contemplated by O.R.C. § 5721.38. Plymouth Park reaches the conclusion that the bankruptcy payment plan could constitute a "redemption" because O.R.C. § 5721.38(C)(2)[5] provides for redemption via payment plan. Plymouth Park contends that a Chapter 13 payment plan could satisfy this "payment plan." The Debtors counter by arguing that O.R.C. § 5721.38(B) only applies to lump sum redemptions, not to payment plan redemptions like those carried out in

---

[5]Ohio Revised Code § 5721.38(C)(2) states:

> During the period beginning on the date a tax certificate is sold under section 5721.33 of the Revised Code and ending on the date the decree is rendered on the foreclosure proceeding under division (F) of section 5721.37 of the Revised Code, the owner of record of the certificate parcel, or any other person entitled to redeem that parcel, may enter into a redemption payment plan with the certificate holder and all secured parties of the certificate holder. The plan shall require the owner or other person to pay the certificate redemption price for the tax certificate, an administrative fee not to exceed one hundred dollars per year, and the actual fees and costs incurred, in installments, with the final installment due no later than the expiration of the certificate period.

a Chapter 13 plan, and that they therefore need only pay the 0.25% interest rate stated on the tax certificate. Debtors' Br. at 1.

Ohio does not have a case which articulates the difference between a redemption of real estate from a tax certificate and the treatment of a tax certificate holder's claim in a Chapter 13 plan. However, the Court does not need to reach this distinction. The 2010 O.R.C. provisions specifically require that the interest rate on the tax certificate to accrue at 0.25% while the Debtors' bankruptcy case remains open. O.R.C. 5721.37(A)(3)(b). Applying traditional tenets of statutory construction to the instant case, specific statutory provisions prevail over more general provisions. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070–71 (2012). As O.R.C. § 5721.37(A)(3)(c) specifically addresses the effect of a Chapter 13 bankruptcy filing on tax certificates, this specific statutory provision would "trump" the more general provision of O.R.C. § 5721.38, which addresses redemption generally. *Hartmann v. Duffey*, 768 N.E.2d 1170, 1172– 73 (Ohio 2002). Furthermore, adoption of Plymouth Park's theory would render O.R.C. § 5721.37(A)(3)(c) mere surplusage, in violation of another basic tenet of statutory construction. *See Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective. When there are two acts upon the same subject, the rule is to give effect to both if possible . . . ." (internal quotation marks omitted)). As explained above, O.R.C. § 5721.37(A)(3)(c) directly addresses the question of what interest rate applies to a tax certificate following the filing of Chapter 13 bankruptcy. If the Court were to apply O.R.C. § 5721.38 to the case as Plymouth Park suggests, this Court would be ignoring O.R.C. § 5721.37(A)(3)(c) and would be failing to give effect to this section which directly discusses bankruptcy. We therefore decline to adopt Plymouth Park's interpretation of what constitutes a "redemption" and apply the 0.25% interest rate to Certificate #1.

## III.

For the reasons stated above, we **AFFIRM** the Bankruptcy Court.